## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

ROBERT JACKSON,                        )
                                       )
        Petitioner,                    )
                                       )
v.                                     )          CV418-189
                                       )
BENJAMIN FORD, WARDEN,                 )
                                       )
        Respondent.                    )

## REPORT AND RECOMMENDATION

Petitioner, an inmate at Calhoun State Prison, brings this 28 U.S.C. § 2254 case raising four grounds for relief all stemming from alleged ineffective assistance of appellate counsel. Doc. 1. After an initial review, the Court ordered the respondent to respond. Doc. 3. Respondent did, and requested that the Court deny petitioner relief. Doc. 6-1. Petitioner replied. Doc. 8. For the following reasons, the petition should be **DENIED**.

## I.    BACKGROUND

On October 25, 2010, an Effingham County grand jury indicted petitioner Robert Jackson and two co-defendants on ten counts of aggravated assault, one count of armed robbery, three counts of kidnapping, one count of burglary, one count of cruelty to children, one

count of possession of a firearm during the commission of a crime, and one count of criminal attempt to commit burglary.  Doc. 7-6 at 50-57. According to the state habeas court,

> The evidence presented at the bench trial showed that on July 28, 2010, an officer responded to an attempted burglary at the residence of Stephen Stewart, Sr., and was informed by two of the victims, Tara Stewart and Colleen Bloodsaw, that while they were in the living room, they heard a loud bang at the back door and saw two black males fleeing from the home in a Honda Element.  Using this information, a lookout was posted near the residence for a car matching the victim's description, and a few days later, on August 2, 2010, there was a traffic stop initiated on a matching vehicle that was 100 yards from the residence.  During this stop, police officers responded on foot to a call about a robbery in progress at Stewart home [sic], and were met by Stephen Stewart, Sr., who informed the officers that there were people inside his house.

> Police officers saw Petitioner, who was wearing a mask, exit the home and point a gun at Stephen Stewart, Sr.  When a police officer ordered Petitioner to raise his hands, Petitioner turned his gun on the officer and fired two times before running from the scene.  Petitioner's co-defendant, Mark Williams, also fled on foot.  Police did a K9 search to track the men, which led them to a storage shed where a handgun, with bullets matching the fired shot casings, as well as a fleece jacket, black t-shirt, and skull cap were recovered. Gloves, which contained DNA, were also found at the scene; the DNA was later found to match Petitioner's DNA within a one in four hundred thousand margin.  Co-defendant Williams was later caught, but Petitioner was able to evade capture.  In the spot where Petitioner fled from, police found sweat pants, a shirt and shoes.  When Petition later called his girlfriend, who owned the Honda Pilot that was parked in

front of the Stewart residence, to pick him up, he was only wearing underwear.

Police later learned that earlier on this same day, Colleen Bloodsaw was inside the residence when she saw the doorknob turn and went outside to investigate. There she was confronted by two masked men, one of whom had a handgun, the other, a shotgun. The men rushed at Bloodsaw, putting a gun against her face, and forcer her into the home. Once inside, the two men forced Bloodsaw, as well as Tara Stewart onto the couch while they rummaged through the home. The men later pointed the gun at Tara Stewart and told her to find the safe. The men then forced Bloodsaw and Stewart into the bedroom at gunpoint while they continued to ransack the home.

At one point, fourteen year old [sic] Stephen Stewart, Jr., woke up and was grabbed by one of the men and pushed into the bedroom with Bloodsaw and Tara Stewart. The men then later forced all three victims back into the living room at gunpoint, during the same time that Stephen Stewart, Sr., returned to the house, causing the men to flee.

Doc. 7-2 at 5-7 (internal citations omitted).

This petition challenges the validity of Jackson's bench-trial conviction on all of the counts. Doc. 1 at 1. Jackson, through new counsel, filed a motion for a new trial and motion to reduce sentence initially challenging that his waiver of jury trial was not knowingly, voluntarily, or intelligently done. Doc. 7-7 at 261-72. Those motions were denied. *Id.* Petitioner filed a direct appeal, doc. 7-6 at 10-22, and the Court of Appeals affirmed his convictions. *Id.* at 7-9; *Jackson v. State,* No. A14A2287 (Ga.

App. Mar. 11, 2015) (unpublished).  On March 2, 2016, petitioner filed a petition for a writ of habeas corpus in Calhoun County challenging his conviction.  Doc. 7-1.  An evidentiary hearing was conducted on October 3, 2016.  Docs. 7-6; 7-7; 7-8.  On March 9, 2017, the state habeas court denied relief.  Doc. 7-2.  On August 2, 2018, the Georgia Supreme Court denied petitioner's application for a certificate of probable cause to appeal.  Docs. 7-3; 7-4; 7-5.

Petitioner filed this federal petition on August 13, 2018.  Doc. 1.  He raised four claims:

1. Appellate counsel was ineffective for not raising that asportation was not proved in light of the Georgia Supreme Court's decision in *Garza v. State*;

2. Appellate counsel was ineffective for not raising on appeal that trial counsel was deficient for presenting evidence that identified Jackson as the perpetrator;

3. Appellate counsel was ineffective for not raising on appeal that trial counsel was deficient for not objecting to hearsay regarding a description of the suspect; and

4. Appellate counsel was ineffective for not raising that Petitioner's right to a jury trial was violated because his jury trial waiver was not intelligently, voluntarily, and knowingly entered.

Doc. 1 at 4.  Respondent argues that the Court should defer to the state habeas court's rulings.  Doc. 6-1.

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).   Accordingly, § 2254 creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations and quotations omitted).

*Brown v. Payton*, 544 U.S. 133, 141 (2005), explained the difference between the two clauses of § 2254(d) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Id.* (citations omitted). As a result, "AEDPA's standard is intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotes and cites omitted). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *id.* at 102-03 (federal habeas review exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *see also White v. Woodall*, 572 U.S. 415, 419 (2014) (the "unreasonable application" of clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong; even

clear error will not suffice.") (citations and quotations omitted); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (same).

As to the "facts" prong, the inquiry focuses not on whether "the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Shiriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citations omitted); *see Wood v. Allen*, 558 U.S. 290, 301 (2010) (it is not sufficient that "the federal habeas court would have reached a different conclusion in the first instance." Rather, the state court's decision must be "objectively unreasonable"). State factual findings have been found "unreasonable" under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was "too powerful to conclude anything but [the petitioner's factual claim]," *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005), and when a state court's finding was "clearly erroneous." *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *see Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015).

AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford

7

state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. This is true for claims of ineffective assistance of counsel, where AEDPA review must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (*quoting Pinholster*, 563 U.S. at 190). In terms of which court receives this deference, the court "looks through" to the "last state court to decide a prisoner's federal claim on the merits in a reasoned opinion." *Wilson v. Sellers*, ___ U.S. ___, 138 S.Ct. 1188, 1192 (2018).

Finally, sandbagging is prohibited. Petitioners must submit their claims to the state courts first. New claims advanced to a federal habeas court face dismissal on exhaustion, if not procedural default, grounds. Respondent has not argued, and the Court has been unable to discern that any of petitioner's claims are either unexhausted or procedurally defaulted. As a result, the Court addresses each of his claims on the merits below. However, because petitioner cannot meet the standard set forth by AEDPA, his petition should be denied.

## III.   DISCUSSION

Petitioner contends that his appellate counsel was ineffective for failing to raise an asportation claim, seeking testimony that identified petitioner as one of the home invaders, failing to object to hearsay evidence, and failing to raise that the waiver of a jury trial was not intelligently, voluntarily, and knowingly entered.   Each of these claims was raised and addressed on the merits by the state habeas court.

To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense.   *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Brooks v. Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.") (quot[es] omitted).   Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness."   *Strickland*, 466 U.S. at 688; *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1331 (11th Cir. 2016).   To show an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.   *Strickland*, 466 U.S. at 690.   Prejudice is shown if "'but for counsel's unprofessional errors, the result of the

proceeding would have been different.'"   *Rivers v. United States*, 2016 WL

2646647 at * 1 (S.D. Ga. May 9, 2016) (*quoting Strickland*, 466 U.S. at 687)).

That requires a "substantial," not just "conceivable," likelihood of a different

result. *Harrington*, 131 S. Ct., at 791.  After review of the record in this case,

the Court cannot determine that the state court's application of

*Strickland* to petitioner's ineffective assistance of appellate counsel

claims was objectively unreasonable.  As a result, his petition should be

**DENIED**.

## A. Failure to Challenge Asportation

Petitioner first argues that "asportation for kidnapping is a ground

that is oft reversed since the Georgia Supreme Court's decision in *Garza*

*v. State*, 284 Ga. 696, 670 S.E.2d 73 (2008)."[1]  Doc. 8 at 4.  Generally

speaking, *Garza,* when applied to kidnapping, requires a showing of

movement that was "more than merely incidental to other criminal

activity."  *Garza*, 670 S.E.2d at 78.  *Garza* established a four part test to

establish asportation, which required the Court to assess four factors: "(1)

the duration of the movement; (2) whether the movement occurred

---

[1] *Garza*, has been superseded by statute as stated in *Hyden v. State,* ___ S.E. 2d ___, 2020 WL
966559 (Ga. Feb. 28, 2020).

during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense." *Id.* at 78 (*citing Govt. of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir. 1979)). In short, petitioner argues that the movement which occurred during the kidnapping for which petitioner was convicted was insufficient to establish the necessary asportation prong.

The habeas court reviewed petitioner's argument. It first acknowledged that defendant's counsel was aware of *Garza* and made a strategic decision not to pursue the claim. Doc. 7-2 at 13-14. Moreover, the habeas court also conducted an evaluation of the *Garza* factors and determined, not only that the elements of asportation were satisfied in this case, but also that petitioner could not show that even if his appellate counsel had raised the issue on appeal, there was no reasonable probability that the outcome of the trial would be different. Doc. 7-2 at

15-16. Accordingly, habeas court concluded that there had neither been deficient performance nor prejudice resulting from that performance. *Id.*

In his brief to the federal court, petitioner points the Court to several cases where the Georgia Court of Appeals reversed criminal convictions for failure to establish the asportation portion of a kidnapping crime. Doc. 8 at 5. He argues that this case had slight movement within a residence which was merely incidental to the conduct of another crime. *Id.* However, determining whether asportation was established during the conduct of an ongoing criminal enterprise is a highly fact-based determination, and there is no indication that the habeas court incorrectly applied the law to the facts of this case. Petitioner's case involved the movement of multiple individuals into various rooms, which gave the perpetrators more control over the victims, and—as the habeas court noted—all the transportation was done at gunpoint which significantly increased the danger.

Having reviewed the determinations of the state habeas court, as well as the record in this case, the Court concludes that petitioner has failed to establish the requisite showing that his appellate counsel was ineffective, or that the state habeas court's determination was

unreasonable. Accordingly, his petition on this ground should be **DENIED**.

      B. <u>Appellate Counsel's failure to raise trial counsel's identification of defendant or object to hearsay.</u>

Petitioner's second and third claims argue that defendant's trial counsel was ineffective for having asked the question that identified petitioner as one of the gunmen involved in the case and for failing to object to hearsay testimony and that appellate counsel was ineffective for failing to raise these grounds on appeal. Doc. 8 at 8, 10. Neither of these grounds are sufficient to grant petitioner habeas relief

Review of the record establishes that petitioner's counsel was the only individual who asked a question directly resulting in the identification of petitioner as a gunman. *Id.* Likewise, petitioner argues that his counsel failed to object to testimony from his girlfriend which stated that she picked him up on the night of the robbery wearing shorts or underwear and nothing else. Doc. 7-2 at 10. In denying petitioner's claim, the state habeas court noted that the "evidence against Petitioner was overwhelming." *Id.* at 13. The state habeas court noted that even in the absence of an identification, there was "DNA evidence linking [petitioner] to the crimes and circumstantial evidence that he was picked

13

up by his girlfriend in only his underwear after being seen fleeing from police without his clothes." *Id.*

Petitioner argues that "had trial counsel remained silent, the uncontroverted evidence would have been that no victim identified Jackson," as the perpetrator. Doc. 8 at 9. While that may be true, that does not mean that petitioner's appellate counsel was ineffective in failing to raise this action during his appeal. There was, as the state habeas court noted, significant evidence against petitioner even in the absence of identification. First, his girlfriend (whose testimony does not constitute hearsay[2]) testified that she picked him up from an area near the crime wearing only his underwear. *See* doc. 7-7 at 155 ("Q: What was Robert wearing when you picked him up? A: Shorts. Q: What kind of shorts? A: I think they were underwear. Q: Underwear? Did he have a shirt on? A: No. Q: Did he have any pants on? A: No."). Second,

---

[2] Generally speaking, "hearsay" is an out of court statement, testified to in court, which is offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). None of the testimony offered by petitioner's girlfriend reported an out of court statement—rather, it reported her own observation of petitioner—accordingly, a hearsay objection would have been meritless. To the extent petitioner objects to his girlfriend's out of court identification of defendant, such testimony "is admissible as long as the declarant testifies at trial and is available for cross-examination." *Tate v. State*, 253 Ga. App. 723, 724, 560 S.E.2d 303, 305 (2002). Here, the witness testified and was available for trial.

Investigator Dickey stated that he found "a pair of army gray sweat pants, a black long john - - - dark color long john shirt and a pair of Nike shoes," during the course of his investigation. *Id*. at 103. While Investigator Dickey did testify that he was told about an individual fleeing from the crime scene, *id*. ("I made my way to that area where they told me they actually witnessed a black male subject only wearing a dark colored pair of shorts leaving from a shed area on the next property over."), he also testified that he spoke with petitioner's girlfriend, who confirmed (as she later testified) that petitioner was the last person to drive her car and that he was picked up close to the crime scene in just his underwear. *Id*. at 105. Finally, as the habeas court noted, there was the corroborating evidence of his codefendants, as well as DNA evidence from clothing left at the scene. Doc. 7-2 at 13.

Given the host of other evidence identifying petitioner as one of the assailants in this case, there is no indication that petitioner's appellate counsel's reasoned determination that no appeal on the issue of identification—hearsay or otherwise—would succeed was unreasonable. *See Miller v. State*, 296 Ga. 9, 12-13, 764 S.E.2d 823, 826 (2014) (No error even if testimony was hearsay when it was "cumulative" of other

admissible hearsay).  Accordingly, petitioner has not identified how the state habeas court either issued a decision that was contrary to or involved an unreasonable application clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts.  Accordingly, his petition on this ground should likewise be **DENIED**.

### C. Failure to Raise Jury Waiver

Finally, petitioner argues that his appellate counsel was ineffective in failing to argue that his waiver of jury trial was not intelligently, voluntarily, and knowingly entered.  He argues that his trial counsel failed to "advise [him] that his constitutional right to appeal would be severely restricted by waiving a jury trial.  This is especially relevant considering there was no legal benefit to waive a jury trial." Doc. 8 at 13.

Petitioner's appellate counsel initially raised the question of whether petitioner had knowingly, intelligently, voluntarily waived his right to a jury trial.  However, upon receipt of the wavier colloquy conducted by the judge prior to trial on October 19, 2011, that ground was withdrawn. *See, e.g.,* doc. 7-6 at 214.  During that colloquy the court noted that it had received a written waiver, and that petitioner had a

right to a jury trial. *Id.* at 216. The Court also explained how a jury trial would differ from a bench trial and how it would not otherwise defendant's substantive rights. *Id.* Petitioner's appellate counsel testified at the evidentiary hearing before the state habeas court that, after reviewing the waiver of petitioner's right to a jury trial, he did not feel any valid basis to appeal remained. Doc. 7-8 at 18. Petitioner's appellate counsel also testified that after speaking extensively with petitioner regarding the waiver, he came to the conclusion that petitioner was "fully advised" and "fully informed by his trial counsel as to all the ramifications and everything involved with giving up [his] right to a jury trial." *Id.* at 20.

Generally speaking, so long as a petitioner received counseling sufficient to explain the advantages and disadvantages of proceeding to a bench trial, there is no ineffective assistance of counsel. *See e.g., Defrancisco v. State*, 289 Ga. App. 115, 119, 656 S.E.2d 238, 244 (2008) (no ineffective assistance for failure to raise trial counsel's failure "to apprise him of the significance of an election to proceed at a bench trial" where "he understood the agreed-upon trial strategy as well as its advantages and disadvantages."). Moreover, in the absence of testimony

from trial counsel (or indeed from petitioner) "it is extremely difficult for a defendant to overcome the strong presumption that trial counsel's conduct fell within the broad range of reasonable professional assistance." *Hendrix v. State,* 284 Ga. 420, 422, 667 S.E.2d 597, 599 (2008). Finally, "in examining the prejudice prong of a claim that trial counsel was ineffective in advising his client to waive his right to a jury trial, other courts have held that the proper inquiry is whether the defendant has 'demonstrated a "reasonable probability" that the [outcome of the] proceeding would have been different had he not waived his right to a jury trial on advice of counsel.' " *Id.* (citing *United States v. Lilly*, 536 F.3d 190, 197 (3d Cir. 2008) (alterations in original) (citations omitted). In this case, there is nothing in the record to indicate that petitioner did not receive adequate counseling regarding his decision to proceed to a bench trial rather than a jury trial. Indeed, the testimony from his appellate counsel reveals that he likely did receive that counsel. Additionally, there is nothing in the record to indicate that petitioner's case would have altered had he proceeded to a jury trial. Considering the evidence presented against defendant, *see supra* pp. 13-15, it is difficult to discern how the outcome would have been different. Thus, the habeas

court did not err, in either sense relevant under § 2254(d), in determining that petitioner's habeas motion lacked merit on this ground.  His petition on this ground should, therefore, be **DENIED**.

## IV.   CONCLUSION

Accordingly, Robert Jackson's § 2254 motion should be **DENIED**. For the reasons set forth above, it is plain that he raises no substantial claim of deprivation of a constitutional right.  Accordingly, no certificate of appealability should issue.   28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2254 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."   Any request for

additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; s*ee Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>7th</u> day of April, 2020.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA